## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATEO CLARK,<br><br>                    Plaintiff,<br><br>    v.<br><br><br>AEROJET ROCKETDYNE HOLDINGS, INC., EILEEN P. DRAKE, KEVIN P. CHILTON, THOMAS A. CORCORAN, JAMES R. HENDERSON, WARREN G. LICHTENSTEIN, LANCE W. LORD, AUDREY MCNIFF and MARTIN TURCHIN,<br><br>                    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Mateo Clark ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Aerojet Rocketdyne Holdings, Inc. ("Aerojet" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public

statements; and (d) review of other publicly available information concerning Aerojet and the Defendants.

## SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Aerojet and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Lockheed Martin Corporation ("Parent") and Mizar Sub Inc. ("Merger Sub," and together with Parent, "Lockheed Martin") (the "Proposed Transaction").

2.     On December 20, 2020, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with Lockheed Martin.  Pursuant to the terms of the Merger Agreement the Company's shareholders will receive $56 in cash per share of Aerojet common stock owned (the "Merger Consideration").

3.     On January 25, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Aerojet and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Aerojet shareholders before the vote on the Proposed Transaction or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Aerojet shares.

9.      Defendant Aerojet is incorporated under the laws of Delaware and has its principal executive offices located at 222 N. Pacific Coast Highway, Suite 500, El Segundo, California 90245.  The Company's common stock trades on the New York Stock Exchange under the symbol "AJRD."

10.     Defendant Eileen P. Drake ("Drake") is and has been the President, Chief Executive Officer, and a director of Aerojet at all times during the relevant time period.

11.     Defendant Kevin P. Chilton ("Chilton") is and has been a director of Aerojet at all times during the relevant time period.

12.     Defendant Thomas A. Corcoran ("Corcoran") is and has been a director of Aerojet at all times during the relevant time period.

13.     Defendant James R. Henderson ("Henderson") is and has been a director of Aerojet at all times during the relevant time period.

14.     Defendant Warren G. Lichtenstein ("Lichtenstein") is and has been the Chairman of the Board of Aerojet at all times during the relevant time period.

15.     Defendant Lance W. Lord ("Lord") is and has been a director of Aerojet at all times during the relevant time period.

16.     Defendant Audrey McNiff ("McNiff") is and has been a director of Aerojet at all times during the relevant time period.

17.     Defendant Martin Turchin ("Turchin") is and has been a director of Aerojet at all times during the relevant time period.

18.     Defendants Drake, Chilton, Corcoran, Henderson, Lichtenstein, Lord, McNiff, and Turchin are collectively referred to herein as the "Individual Defendants."

19.     The Individual Defendants, along with Defendant Aerojet, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     Aerojet is primarily a technology-based engineering and manufacturing company that develops and produces specialized power and propulsion systems, as well as armament systems. The Company develops and manufactures liquid and solid rocket propulsion, air-

breathing hypersonic engines, and electric power and propulsion for space, defense, civil and commercial applications.

21.      The Company operates as a merchant supplier in the aerospace and defense industry. The Company has nearly 5,000 employees and 13 operating locations throughout the U.S. Aerojet acts as either a prime contractor, selling directly to the end user, or as a subcontractor, selling products to prime contractors. The principal end user customers of the Company's products and technologies are primarily agencies of the U.S. government.

### The Company Announces the Proposed Transaction

22.      On December 20, 2020, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> EL SEGUNDO, Calif., Dec. 20, 2020 (GLOBE NEWSWIRE) -- Aerojet Rocketdyne Holdings, Inc. (NYSE: AJRD) today announced that it has entered into a definitive agreement to be acquired by Lockheed Martin Corporation (NYSE: LMT) in an all-cash transaction with a total equity value of $5.0 billion.

> Under the terms of the agreement, which has been unanimously approved by each company's Board of Directors, Lockheed Martin will acquire Aerojet Rocketdyne for $56.00 per share in cash, representing a premium of approximately 33% to Aerojet Rocketdyne's closing stock price on December 18, 2020, and a premium of approximately 42% to the Company's volume weighted average stock price ("VWAP") for the last 90 trading days.

> As part of the transaction, Aerojet Rocketdyne declared a $5.00 per share pre-closing special dividend to holders of its common shares and convertible senior notes, on an as-converted basis. The special dividend will be paid on March 24, 2021, to holders of record as of March 10, 2021. The payment of this special dividend, unless revoked, will adjust the consideration to be paid by Lockheed Martin to $51.00 per share at closing.

> "We are pleased to bring together our complementary companies in a transformative transaction that will provide premium cash value for our stockholders and tremendous benefits for our employees, customers and partners," said Eileen P. Drake, CEO and President of Aerojet Rocketdyne. "Joining Lockheed Martin is a testament to the world-class organization and team we've built and represents a natural next phase of our evolution. As part of

Lockheed Martin, we will bring our advanced technologies together with their substantial expertise and resources to accelerate our shared purpose: enabling the defense of our nation and space exploration. On behalf of the Aerojet Rocketdyne Board and management team, I'd like to thank all of our employees for their unwavering dedication and focus in helping us achieve this great milestone."

The transaction is expected to close in the second half of 2021 and is subject to the satisfaction of customary closing conditions, including regulatory approvals and approval by Aerojet Rocketdyne's stockholders. A transition team will be formed to allow for a seamless integration and ensure continuity for customers, employees and other stakeholders.

**Advisors**

Citigroup Global Markets Inc. and Evercore were co-lead financial advisors to Aerojet Rocketdyne. Jenner & Block LLP acted as M&A counsel and Gibson, Dunn & Crutcher LLP acted as Securities counsel.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT

23.     On January 25, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24.     Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Company's Financial Projections**

25.      The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26.      The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27.      In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28.      Specifically, with respect to all the forecasts the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures,

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

including: (i) EBITDA; (ii) Unlevered Free Cash Flow; (iii) Adjusted EBITDA; and (iv) Adjusted Unlevered Free Cash Flow.

29.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.  Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding the Financial Opinions**

30.     The Proxy Statement contains the financial analyses and opinion of Citigroup Global Markets Inc. ("Citi") concerning the Proposed Transaction, but fails to provide material information concerning such.

31.     With respect to Citi's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of estimated terminal values for Aerojet calculated under each forecast; (ii) the inputs and assumptions used by Citi to calculate the perpetuity growth rates of 2.0% and 3.0%; (iii) the estimated present values of the projected cash flows under each forecast utilized; (iv) the inputs and assumptions used by Citi to calculate the applied discount rate range of 7.8% to 9.0%; (v) the Company's weighted average cost of capital; (vi) the Company's net debt; and (vii) the number of Aerojet common stock outstanding on a fully diluted basis.

32.     With respect to Citi's *Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the illustrative one year forward adjusted firm value utilized; (ii) the inputs and assumptions used by Citi to calculate the Adjusted EBITDA multiples of 9.5x to 10.9x; (iii) Aerojet' net debt; (iv) the number of Aerojet common stock outstanding on a fully

diluted basis; (v) the inputs and assumptions used by Citi to calculate the discount rate of 8.7%; and (vi) Aerojet's cost of equity.

33.     With respect to Citi's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the value of each transaction selected; and (ii) the date of closing of each transaction.

34.     With respect to Citi's Wall Street research analysts' one-year forward price targets analysis, the Proxy Statement fails to disclose the specific price targets used in the analysis.

35.     Next, the Proxy Statement contains the financial analyses and opinion of Evercore Group L.L.C. ("Evercore") concerning the Proposed Transaction, but fails to provide material information concerning such.

36.     With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for Aerojet calculated under each forecast; (ii) the inputs and assumptions used by Evercore to calculate the perpetuity growth rates of 2.0% and 3.0%; (iii) the inputs and assumptions used by Evercore to calculate the applied discount rate range of 7.50% to 8.75%; (iv) Aerojet's estimated weighted average cost of capital; (v) Aerojet's total debt (excluding convertible notes); (vi) Aerojet's average estimated present value of real estate; and (vii) Aerojet's number of fully diluted shares of Aerojet common stock.

37.     With respect to Evercore's *Selected Public Company Trading Analysis – Base Case Forecast*, the Proxy Statement fails to disclose: (i) the inputs and assumptions used by Evercore to calculate the enterprise value/Adjusted EBITDA multiples of 10.0x – 12.0x; (ii) the inputs and assumptions used by Evercore to calculate the enterprise value/Adjusted EBITDA multiples of 9.0x – 11.0x; (iii) the inputs and assumptions used by Evercore to calculate the

price/EPS multiples of 14.0x – 17.0x; and (iv) the inputs and assumptions used by Evercore to calculate the price/EPS multiples of 13.0x – 16.0x.

38.     With respect to Evercore's *Selected Public Company Trading Analysis – Adjusted Base Case Forecast*, the Proxy Statement fails to disclose: (i) the inputs and assumptions used by Evercore to calculate the enterprise value/Adjusted EBITDA multiples of 10.0x – 12.0x; (ii) the inputs and assumptions used by Evercore to calculate the enterprise value/Adjusted EBITDA multiples of 9.0x – 11.0x; (iii) the inputs and assumptions used by Evercore to calculate the price/EPS multiples of 14.0x – 17.0x; and (iv) the inputs and assumptions used by Evercore to calculate the price/EPS multiples of 13.0x – 16.0x.

39.     With respect to Evercore's *Selected Transactions Analysis*, the Proxy Statement fails to disclose: (i) the value of each specific transaction selected; and (ii) the date on which each selected transaction closed.

40.     With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose: (i) the specific price targets used in the analysis; and (ii) the sources thereof.

41.     With respect to Evercore's *Illustrative Present Value of Future Share Price* analysis, the Proxy Statement fails to disclose: (i) the inputs and assumptions used by Evercore to calculate the range of illustrative price-to-earnings ratios of 20.6x to 22.6x; and (ii) the inputs and assumptions used by Evercore to calculate the discount rate range of 8.25% to 9.25%; and (iii) Aerojet's cost of equity.

42.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover,

the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

43.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Sales Process

44.     The Proxy Statement contains information concerning the background of the Proposed Transaction, but fails to disclose material information concerning such.

45.     First, the Proxy Statement fails to disclose whether Companies A, C, D, and E were contacted by the Board and invited to participate in the sales process.

46.     Next, the Proxy Statement fails to disclose whether the Company entered into any confidentiality agreements with any other party besides Lockheed Martin relating to the sales process, and if so, whether the terms of that agreement differed from the one with Lockheed Martin, and in what way.

47.     Lastly, the Proxy Statement fails to disclose why the Company retained multiple financial advisors, as well as the identities and roles of the financial advisor(s) not named in connection with the Proposed Transactions.

48.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide

shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

49.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

51.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

52.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

53.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

54.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

55.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

56.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were

intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

57.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

58.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

59.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.    The Individual Defendants acted as controlling persons of Aerojet within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Aerojet, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61.    Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

62.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

63.     In addition, as set forth in the Proxy Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

66.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 4, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*